**FILED**

**JAMES J. WALDRON, CLERK**

**August 7, 2014**

**U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: /s/Nelson Dos Santos,
Deputy**

**NOT FOR PUBLICATION**

                 UNITED STATES BANKRUPTCY COURT
                  FOR THE DISTRICT OF NEW JERSEY

_____
                                           :
IN RE:                           :        CHAPTER 11
                                           :
One2One Communications, LLC,      :
                                           :        CASE NO.:   12-27311   (NLW)
                         Debtor.        :
_____:        **OPINION**


**Before:**       **HON. NOVALYN L. WINFIELD**

**A P P E A R A N C E S :**

Courtney A. Schael, Esq.
Ashford - Schael, LLC
1371 Morris Avenue
Union, NJ 07083
Attorneys for Quad/Graphics, Inc.

Michael D. Sirota, Esq.
David M. Bass, Esq.
Nicholas B. Vislocky, Esq.
Cole, Schotz, Meisel, Forman & Leonard, PA
Court Plaza North
25 Main Street, PO Box 800
Hackensack, NJ 07062
Attorneys for One2One Holdings, LLC

Mitchell Malzberg, Esq.
Law Office of Mitchell Malzberg, Esq.
PO Box 5122
6 E. Main Street, Suite 7
Clinton, NJ 08809
Attorneys for Employees and Officers of One2One Communications, LLC

This matter is before the court on a motion by Quad/Graphics, Inc. ("Quad") (i) to obtain derivative standing to pursue avoidance actions and (ii) to extend the time periods under Bankruptcy Code §§ 108(a) and 546(a) for filing avoidance actions.  One2One Communications, LLC ("Debtor" or "Reorganized Debtor") and certain officers and employees of the Reorganized Debtor, including Bruce Heverly, Joanne Heverly, Amy Heverly-DeSanto, Travis Howe, Frank DeCicco, Tom Mason and certain other employees and officers ("Officers and Employees"), object to Quad's motion and request denial of the relief sought by Quad.  As set forth below, the court denies Quad's motion for derivative standing to pursue avoidance actions and to extend the time period for pursuing same.

## BACKGROUND

The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on July 10, 2012. Although several factors prompted the Debtor's Chapter 11 case, unquestionably a major factor was the Debtor's litigation with Quad, which culminated in a judgment in favor of Quad in the amount of $9,359,630.91.[1]  This judgment was the largest claim against the Debtor when it filed for Chapter 11 relief.

Early in the case, the United States Trustee appointed Quad, Ricoh Production Print Solutions, LLC and Enterprise Group as members of the Official Unsecured Creditors' Committee ("the Creditors' Committee").  The Creditors' Committee retained counsel and a financial consultant and fully participated in the case, including negotiations with the Debtor on

---

[1] The Debtor's Chief Executive Officer, Bruce Heverly, was also a defendant in the litigation with Quad and is also subject to the judgment.

the terms of a plan of reorganization. Those negotiations led to a First Amended Plan of Reorganization, which was supported by the Creditors' Committee, but not by Quad. Quad objected to the First Amended Plan on several grounds, and, after hearing extensive testimony, the court denied confirmation of the Debtor's First Amended Plan on December 6, 2012, primarily on the ground that the Debtor did not demonstrate that it met the "new value" exception.

Ultimately, the Debtor obtained an investor, Béla Szigethy ("Szigethy"), who formed One2One Holdings, LLC to acquire 100% of the ownership interest in the Debtor in exchange for an investment of $200,000.[2] Under the Plan Support Agreement between the Debtor and One2One Holdings, LLC the Debtor's existing management was continued in place. Mr. Szigethy's investment and the Plan Support Agreement eventually resulted in a Fourth Amended Plan that was submitted to creditors. Notably, in the Fourth Amended Disclosure Statement sent to creditors, the Debtor explicitly disclosed:

> No claims shall be pursued against any principal, director, officer, shareholder or employee of the Debtor. This determination was made by the Debtor and Creditors' Committee based upon the value of the claims, the cost to pursue the claims, the likelihood of success in pursuing the claim, and the ability to collect if the claim was pursued.

Fourth Amended Disclosure Statement, Dkt. No. 206 at 19-20.

---

[2] Neither the Debtor nor its principals had any business or financial relationship with Mr. Szigethy.

After the court approved the Debtor's Fourth Amended Disclosure Statement and the Debtor submitted the Fourth Amended Plan of Reorganization to its creditors for voting, impaired classes One through Five voted to accept the Fourth Amended Plan.  Only Quad, separately classified in classes Six and Seven, rejected the Plan.[3]

Consistent with its rejection of the Debtor's plan, Quad also raised the decision by the Debtor and the Creditor's Committee to not pursue avoidance actions as a basis for objection to confirmation.  The hearing to confirm the Debtor's Fourth Amended Plan required five days of testimony.  As part of the February 2013 confirmation hearings, the court considered the testimony presented by the financial advisors for the Debtor and Quad regarding potential avoidance action recoveries.  On this specific issue, the court determined that Quad's expert overestimated the amount that could be realized from avoidance actions and underestimated the costs to effect such recoveries.  Additionally, the court reviewed the testimony given by the financial advisor to the Creditors' Committee at the prior confirmation hearing and found that the decision by the Creditors' Committee to not pursue avoidance actions was an appropriate exercise of business judgment.  The court stated:

> So, it's not correct to say that there was no consideration given by the committee to an analysis of the preferences and other elements that go into liquidation analysis.  What Mr. Varsalone testified to, I think, is a business negotiation and an exercise of business judgment by both the committee, its financial advisor, the committee itself, its counsel, and the debtor and its counsel.

(Feb. 25, 2013 Tr. At 26:16-22).   Dkt # 252.

---

[3] A total of twenty votes were cast.  Only the two votes cast by Quad rejected the Third Amended Plan.

This exercise of business judgement by the Creditors' Committee and its counsel also is evidenced by counsel's email response to Quad's offer to purchase the avoidance action for $5,000.00:

> Courtney,
>
> You are very aware of the reasons that a creditors committee builds a preference waiver in to the plan negotiations. They are part of a "package" deal. The committee does not necessarily agree to anyone else's valuation of alleged chapter 5 claims.
>
> –Ken

Debtor's Objection to Motion of Quadgraphics, Inc., Ex. B.

The court issued its order confirming the Debtor's Fourth Amended Plan of Reorganization on March 25, 2013. Quad did not request that this court grant it derivative standing to pursue avoidance actions until July 10, 2014. Notably, July 10, 2014 is the last day on which an avoidance action could be instituted under Bankruptcy Code § 546(a), absent an extension of time granted by the court.

Quad's motion does not provide much in the way of factual support for the derivative standing it seeks to prosecute avoidance actions. It simply recites the history of its efforts opposing the Debtor's plan of reorganization, including its opposition to the release of actions against insiders and other third parties.

## **DISCUSSION**

A number of the Circuit Courts of Appeal, including the Third Circuit, hold that a creditors' committee or a creditor have a derivative right to pursue avoidance actions that a

trustee or debtor-in-possession declines to prosecute. Official Comm. Of Unsecured Creditors of Cybergenics Corp. v. Chinery, 330 F.3d 548 (3d Cir. 2003) (en banc) (derivative standing appropriate if the debtor "unreasonably refuses to pursue" a fraudulent transfer action); In re Racing Serv., 540 F.3d 892, 898 (8th Cir. 2008)(derivative standing available to a creditor where a trustee or debtor-in-possession has shown it is unable or unwilling to pursue avoidance actions); Fogel v. Zell, 221 F.3d 955, 965-66 (7th Cir. 2000)(creditor may request court permission to bring an action that trustee unjustifiably refuses to bring); In re Parmetex, Inc., 199 F.3d 1029, 1031 (9th Cir. 1999)(unsecured creditors had standing to bring fraudulent transfer actions against Chapter 7 debtor pursuant to a stipulation with the trustee that was approved by the court); Canadian Pac. Forest Prods. Ltd v. J.D. Irving, Ltd.  (In re The Gibson Grp., Inc.), 66 F.3d 1436, 1438 (6th Cir. 1995)(creditor may pursue avoidance action if debtor-in-possession unjustifiably refuses); Unsecured Creditors Comm. of STN Enters., Inc. v. Noyes (In re STN Enters.), 779 F.2d 901, 905-06 (2d Cir. 1985)(creditors' committee may have derivative standing to bring suit where debtor-in-possession unjustifiably fails to bring suit).   Plainly then, Quad may request derivative standing, which this court should grant if the court finds it unreasonable that neither the Debtor nor the Creditors' Committee pursued the potential avoidance actions in this case.

Presumably because the issue was not before the court, the Third Circuit, in Cybergenics II, did not set out criteria for determining when a debtor-in-possession's refusal to institute an avoidance action is unreasonable or unjustifiable.[4]  However, criteria have been articulated by other courts and typically include: 1) a demand on the statutorily authorized party to act, 2) a

---

[4] The issue before the Third Circuit was whether the Supreme Court's decision in Hartford Underwriters Ins. Co. v. Union Planters Bank, 530 U.S. 1 (2000) precluded the bankruptcy court from authorizing derivative standing for the Creditors' Committee to bring fraudulent transfer actions.

6

refusal by that party, 3) the existence of a colorable claim that would benefit the estate based on cost-benefit analysis performed by the court, and 4) a determination that the refusal is not in keeping with the statutorily authorized party's duties. Gibson Grp., 66 F.3d at 1146. The court in Racing Serv. emphasized that "At bottom, the determination of whether the trustee unjustifiably refuses to bring a creditor's proposed claims will require bankruptcy courts to perform a cost-benefit analysis." 540 F.3d at 901; *see also* STN Enters. 779 F.2d at 905. The Eighth Circuit further relying on STN Enters. stated:

> While by no means exhaustive, among the factors the court should consider in conducting this analysis are: (1) "[the] probabilities of legal success and financial recovery in event of success"; (2) the creditor's proposed fee arrangement; and (3) "the anticipated delay and expense to the bankruptcy estate that the initiation and continuation of litigation will likely produce." We do not suggest, however, that the bankruptcy court "undertake a mini-trial" in evaluating a creditor's request for derivative standing.

540 F.3d at 901. (citations omitted).

Applying the criteria identified in Gibson Grp., Racing Serv., and STN Enters., this court determines that it will not grant Quad derivative standing to pursue actions on behalf of the Debtor's estate and creditors.[5] While Quad does not demonstrate that it ever made a formal demand on either the Debtor or the Creditors' Committee and that they refused, the court views Quad's offers to buy the avoidance actions and its objections to confirmation as the equivalent of a formal demand. Further, the contents of the Fourth Amended Plan may be viewed as the equivalent of the refusal by the Debtor and the Creditors' Committee to agree to Quad's demand. However, where Quad falls short is demonstrating that it has colorable claims that, after

---

[5] It is not entirely clear exactly what claims Quad wishes to pursue, as they are not specified in the motion and the proposed order simply references "actions on behalf of the Debtor's estate and creditors."

evaluation of the claims under a cost-benefit analysis, will benefit the estate.

During the confirmation hearing, this court heard substantial testimony from the financial consultants for the Debtor, the Creditors' Committee and Quad regarding potential avoidance claims. In essence, the court had the benefit of a "mini-trial" on valuation as part of the confirmation hearing. This court did not find Quad's expert persuasive as to the value he placed on the avoidance actions. Further, the court also found that the costs of pursuing the claims were not adequately considered by Quad's expert. Equally important, the testimony of the Creditors' Committee's financial consultant was persuasive both as to valuation and the business judgment by the Creditors' Committee that the best approach for obtaining a recovery for unsecured creditors was not a sale, but a negotiated plan of reorganization. In connection with that approach, the financial consultant testified that there were likely avoidance claims that could be pursued, but that there were also time and litigation risks as well as the cost factor to be considered, and that these issues were considered in negotiating the plan of reorganization. That analysis also formed part of the strategy of Creditors' Committee counsel as evidenced by the email from the Committee's counsel to Quad's counsel referenced *supra*. Also noteworthy is that the Creditors' Committee's business judgment on non-pursuit of avoidance actions was effectively ratified by the affirmative votes of all creditors (except for Quad) who voted on the Debtor's plan. Presumably these creditors voted not only on the expectation of a recovery on their prepetition claims, but also with the hope of doing future business with the Reorganized Debtor. Quad did not supply any facts in its motion papers or at oral argument to give the court a basis to overturn the business judgment of the Creditors' Committee, its professionals, and the affirmatively voting creditors, that potential recoveries on avoidance actions were not essential

to a plan of reorganization.

Quad's basic argument is that the court should grant it derivative standing now because the plan confirmation order may be overturned on appeal and Quad can then pursue the avoidance actions on behalf of whatever bankruptcy estate might then exist. The problems with this approach are threefold. First, it cannot now be predicted whether or when the confirmation order will be reversed. Second, it cannot now be discerned whether the case would remain in Chapter 11, be converted to a Chapter 7 case or dismissed. Third, Quad has not offered a description of the avoidance actions to be pursued, an estimate of costs that would be incurred, or whether Quad would absorb any or all of the litigation costs. In short, there are no facts that weigh in favor of granting Quad derivative standing to pursue the unspecified avoidance claims.

## **CONCLUSION**

The motion by Quad for derivative standing to pursue avoidance actions and to extend the time to pursue such actions is denied as unsupported by any facts warranting such relief.

Dated: August 7, 2014         ____/S/_____
                              NOVALYN L. WINFIELD
                              United States Bankruptcy Judge